## Case No. 2,290.

### CAHILL v. BECKFORD et al.

[Holmes, 48;[1] Merw. Pat. Inv. 112.]

Circuit Court, D. Massachusetts. April Term, 1871.

#### PATENTS—DRESSING FOR LEATHER—VALIDITY.

The patent granted Miles S. Cahill, Nov. 10, 1868, for an improved bronze dressing for leather, *held* valid.

[Cited in Cahill v. Brown, Case No. 2,291.]

[In equity. Bill by Miles S. Cahill against John D. Beckford and others to enjoin the alleged infringement of letters-patent No. 83,925, and for an accounting.]

· James B. Robb, for complainant.

E. P. Brown, for defendants.

SHEPLEY, Circuit Judge. The complainant, on the first of September, 1868, applied for a patent for an "Improved Bronze Dressing for Leather," for which letters-patent issued to him dated Nov. 10, 1868 [No. 83,925]. The object of the invention was to provide a fluid which would give a reasonably durable bronze finish to leather, resembling the French metallic bronze finish. This was designed as an accessory article in the trade, to give a bronze finish to boots or shoes, or to renovate this finish when the goods had become tarnished; and also for use in families, to renovate the bronze hue, on the surface of boots and shoes, when it had become worn and unsightly before the leather itself was defaced by wear.

He describes his invention as a preparation of fuchsine with spirit varnish, and gives the formula of preparation; adding that a small quantity of aniline blue may be added to increase the brilliancy of the dressing if desired, or a small quantity of metallic bronze powder may be mixed with it, when using it on metallic surfaces. The claim is for "a bronze dressing for leather, composed of spirit varnish and aniline fuchsine, substantially as set forth, either with or without the addition of aniline blue or bronze powder, all as described, as a new article of manufacture." Disregarding those defences set up in the answer in support of which no testimony has been offered, the case presents only the questions, whether the complainant was the original and first inventor of the thing patented, and, if so, whether the defendants have infringed upon his rights under the patent. It becomes necessary, to a proper elucidation of the first question, to understand the precise state of the art before the invention and manufacture of a bronze dressing prepared on a formula like that described in the plaintiff's specification. Before that time, colored varnishes were well known and in common use, produced by adding to the varnish pigments of the desired color, and bronze varnishes produced by adding to the varnish metallic bronze powders. Aniline dyes or coloring liquors were in common use. They were alcoholic or other solutions of the aniline crystals; aniline crystals being sulphates or chlorides of aniline, itself a colorless substance produced by the distillation of coal tar. By acting with oxidizing or reducing agents upon fuchsine or aniline red, which is a goldish green crystal, various shades of color and also various colors were produced, according to the degree of reduction or oxidation. These alcoholic solutions of the aniline colors had also been used, mixed with alcoholic solutions of shellac, for bronzing and for giving a goldish or greenish, and a goldish and greenish, color to straw goods and similar articles. But these mixtures had none of the requisites of a bronze varnish or dressing for leather; for the reason that, when shellac was present in quantity sufficient to make a reasonably durable dressing, the action of the shellac in the varnish destroyed or changed the color of the bronze crystal. The color of the crystal of aniline violet is bronze; and an alcoholic solution of this crystal, when applied to straw goods, left, after the evaporation of the alcohol, a bronze powder or crystal on the surface of the straw or other material to which it was applied. The same result was attained by mixing, in the proper proportions, an alcoholic solution of aniline blue with an alcoholic solution of aniline red or fuchsine. But the property which the shellac possessed of modifying the color of the aniline dyes had been an obstacle to the production of a bronze varnish. The complainant seized upon this very property which the shellac possesses of modifying the color of the aniline crystal, and by experiment discovered that the shellac varnish, which destroyed the bronze color in the bronze crystal of aniline violet, developed a bronze color from the green crystal of fuchsine or aniline red. In this preparation, not only was the desired color obtained, but a resinous coating was formed on the surface of the leather sufficiently compact to be reasonably durable. This was a new process of manufacture, and the manufactured product was new and useful; and, if the complainant was the first and original inventor or discoverer of it, he is entitled to be protected in his rights under his patent.

The defendants allege, that what was claimed as new in the complainant's patent was in public and common use in this country before the pretended invention thereof by the complainant; and in their answer they specify the names and residences of various parties who, they allege, had known and used such a bronze dressing before the date when complainant claims to have invented his process of manufacture.

Attention will only be given to those allegations in the answer in support of which some evidence has been offered, and which were relied upon by counsel at the hearing.

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

Consider Southworth, who was a manufacturer of woollen goods, and familiar with the use of aniline dyes, noticed that a sufficiently strong solution gave a bronze appearance to any article to which it was applied. He tried it upon leather, and found that a solution of aniline alone would rub off and redden any thing with which it came in contact. He then experimented in the use of varnish over the dye to fix the color, but found that the varnish destroyed the bronze color. After various experiments, he prepared and put into the market an article which he offered for sale under the various names of "gilt," "metallic lustre stain," "hat bronze," "bonnet bronze," and "bronze varnish." This was sometimes a solution of aniline violet, sometimes a solution of aniline red mixed with shellac varnish, without any definite rule of quantities or proportions. The complainant mingles fuchsine with varnish, the limit to the quantity of fuchsine being the point of saturation, or the quantity which the varnish will dissolve. Southworth mixed an alcoholic solution of fuchsine with an alcoholic solution of shellac. It is not difficult to see that the result would not be the same in the two cases. The witness Babcock gives the reason: "To make a bronze dressing like that described in the plaintiff's patent requires a saturated solution of fuchsine. Now a saturated solution of fuchsine, mixed with the amount of alcohol necessary to hold shellac in solution, produces a mixture which does not contain a saturated solution of fuchsine; that is, too much alcohol, too little fuchsine and shellac." He says further: "I do not consider it possible to mix a solution of fuchsine in alcohol with shellac varnish, and produce a good bronze dressing for leather." This opinion of the expert is sustained by all the testimony as to the utility of the article manufactured by Southworth. He produced and sold an article, which answered the purpose of a dressing for a straw hat or bonnet, or for giving a fancy finish to the edge or shank of a boot or shoe, imparting a gilt or goldish color. The evidence clearly establishes, that it was not suitable for a dressing for leather, and that Southworth's method will not produce a good dressing of any kind for leather, and certainly not a dressing substantially like the complainant's patent. He appears never to have bronzed any skin, except one as an experiment, and that was destroyed. Subsequent experiments by purchasers of Southworth's "metallic lustre or stain," in applying it as a bronze dressing for leather, resulted in demonstrating its want of fitness for, or adaptation to, that purpose, and in driving it from the market, and substantially putting an end to its manufacture or sale for that purpose.

Mr. Beckford, also, before the date of complainant's inventions, manufactured an article such as was then in use for bronzing straw goods. He sent agents about the country to sell the recipes or formulae for making this article. The value of the article made by Beckford may be best illustrated by the testimony of Scott, one of his agents who travelled for him to sell the recipes. He testified that he fixed the price of a town at from $150 to $500, according to the population; receiving ten per cent. in advance, and an agreement in writing that the balance should be paid as soon as a certain amount of work was done. As soon as he left the town, he destroyed the agreement, "never inquired of the purchasers whether they had done the stated amount of work, never called upon them afterwards, and never intended to." Considered it a "bubble that would soon burst."

To prove that Beckford anticipated Cahill, certain papers, Exhibits A, B, and D, are produced and relied upon in defence. These purport to be the "receipts" sold by Beckford and his agents. So far as Exhibits B and D are concerned, they do not indicate the principle upon which Cahill, the complainant, proceeds. Cahill's principle consists in developing, by means of the addition of relatively a large amount of shellac, an entirely different color from the natural crystal of the fuchsine. The principle upon which Beckford proceeded, as shown by Exhibits B and D, was to alter the greenish or goldish shade of the crystal of fuchsine or aniline red by the addition of aniline blue. To make a suitable dressing for leather, in consequence of the rough usage to which articles made of leather are subjected, it is necessary to have a considerable body of varnish. Beckford's Exhibits B and D show that he produced a bronze, by the use of bronze-colored crystals; adding but little shellac, that the color might not be changed. The evidence shows, that there was not the presence of any sufficient quantity of resinous substance in his preparation to make a dressing or enamel of any practical use for leather. Mr. Cahill produced his by the use of a green crystal; adding a large amount of shellac, that the color might be changed. This left upon the surface of the leather the desired bronze color, and the requisite body of varnish to make it a reasonably durable dressing.

If Exhibit A correctly describes a process known and used before Cahill's, it might be more difficult to decide that it did not anticipate the complainant's invention. But the words and figures in Exhibit A, which attach to this paper any particular significance over Exhibits B and D, have manifestly been interlined in different ink since the paper was first written. There is no explanation of the alterations. There is no evidence of the existence of the paper in its altered state before the date of Cahill's claim of invention. Without going into details of the testimony, I deem it sufficient to say that I am fully satisfied that no such paper, in its present form, was in existence until after the date

of Cahill's patent; and that, as a piece of evidence in the cause, the exhibit is undeserving of further consideration or remark.

It is objected to the patent, that it is not claimed in the specification that the articles are so compounded as to produce a chemical change. On examination of the specification, I find the requisite proportions clearly stated, and the manner of compounding them, and the result of the process. This is sufficient, as it is enough to enable any' one, even one without skill in the art, to use the process. It is not essential that the inventor should have been sufficiently learned to have thoroughly understood or accurately stated the philosophy of a process which he had invented and reduced to practical use. There does not appear to be any conflict in the testimony upon the question of infringement.

The complainants are entitled to an injunction and an account, as prayed for in the bill. Unless the parties agree as to the amount of damages, the cause must be referred to a master to ascertain the amount. Decree accordingly.

[NOTE. For another case involving this patent, see Cahill v. Brown, Case No. 2,291.]